# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DONALD P. BOLAND and MARY A. BOLAND, Individually and on Behalf of All Others Similarly Situated, | : : : : : | **Civil Action No.:** |
| Plaintiffs(s), | : : : : | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | : : : | |
| | : | **JURY TRIAL DEMANDED** |
| GERDAU S.A., ANDRÉ BIER GERDAU JOHANNPETER, HARLEY LORENTZ SCARDOELLI, ANDRÉ PIRAS DE OLIVEIRA DIAS, and OSVALDO BURGOS SCHIRMER, | : : : : : : | |
| Defendants. | : : | |

Plaintiffs Donald A. Boland and Mary A. Boland ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Gerdau S.A. ("Gerdau" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of purchasers of Gerdau's American depositary receipts ("ADRs") between June 2, 2011 and May 15, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Gerdau produces and commercializes steel products worldwide. The Company operates through Brazil Business Operation, North America Business Operation, South America Business Operation, and Special Steel Business Operation segments. The largest producer of long steel in the Americas, Gerdau has steel mills in Brazil, Argentina, Canada, Chile, Colombia, the Dominican Republic, Guatemala, India, Mexico, Peru, Spain, the United States, Uruguay, and Venezuela.  The Company sells its products through independent distributors, direct sales from the mills, and its retail network.

3.      Gerdau was founded in 1901 and is based in Porto Alegre, Brazil. The Company is a subsidiary of Metalúrgica Gerdau S.A. and its ADRs trade on the New York Stock Exchange ("NYSE") under the ticker symbol "GGB."

4.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was engaged in a bribery scheme in collusion with Brazil's Board of Tax Appeals ("CARF"); (ii) Gerdau had defrauded Brazilian tax authorities of roughly $429 million in taxes; (iii) Gerdau's Chief Executive Officer ("CEO"), Defendant André Bier Gerdau Johannpeter ("Johannpeter") and other directors and employees of the Company had engaged in bribery, money laundering, and influence peddling; and (iv) as a result of the

foregoing, Defendants' statements about Gerdau's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5.      On or about March 26, 2015, Brazilian authorities announced that a Federal Police Investigation, dubbed Operation Zelotes, had uncovered a multibillion-dollar tax fraud scheme at the Ministry of Finance ("Finance Ministry"), reporting that as many as 70 companies had bribed members of the CARF, a body within the Finance Ministry that hears appeals on tax disputes, to obtain favorable rulings that recused or waived the amounts that the companies owed.  On or around March 29, 2015, it was reported that Gerdau was among the companies under investigation.

6.      On December 4, 2015, the Brazilian publication *Jornal do Comércio* reported that a report by a committee of the National Congress of Brazil had named Gerdau, along with other companies, as a beneficiary of a tax evasion scheme.

7.      On this news, Gerdau's ADR price fell $0.11, or 6.96%, to close at $1.47 on December 4, 2015.

8.      On or around February 25, 2016, post-market, Brazilian police raided Gerdau offices in connection with Operation Zelotes, as police carried out some 20 court orders for testimony and 18 search warrants in Recife, Porto Alegre, Rio de Janeiro, Sao Pãulo, and Brasília.  Gerdau's CEO, Defendant Johannpeter, was among the individuals ordered to testify by day's end.  In an e-mailed statement, Gerdau stated that the Company had never authorized the use of its name in illegal negotiations and that the Company abided by rigorous ethical standards.

9.      On this news, Gerdau's ADR price fell $0.03, or 3.16%, to close at $0.92 on February 25, 2016.

10.     On February 29, 2016, Gerdau announced that it would delay the release of its fourth-quarter financial results as the Company "analyze[d] the case records involving Gerdau in the recent phase of [the] Zelotes Operation."

11.     On May 16, 2016, various news outlets reported that Brazil's federal police had accused Gerdau of evading $429 million in taxes and indicted a total of 19 Gerdau personnel, including Defendant Johannpeter and some of the Company's executives, directors and lawyers, on corruption-related charges including bribery, money laundering, and influence peddling.

12.     On this news, Gerdau's ADR price fell $0.13, or over 7%, to close at $1.72 on May 16, 2016.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because Gerdau's ADRs trade on the NYSE, located within this Judicial District.

17.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

18.     Plaintiffs, as set forth in the accompanying certification, incorporated by reference herein, purchased Gerdau ADRs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Gerdau is incorporated under the laws of Brazil, with its principal executive offices located at Av. Farrapos 1811, Porto Alegre, Rio Grande do Sul, Brazil CEP 90220-005.  Gerdau's ADRs trade on the NYSE under the ticker symbol "GGB."

20.     Defendant Johannpeter has served at all relevant times as Chief Executive Officer of Gerdau.

21.     Defendant Harley Lorentz Scardoelli ("Scardoelli") has served as Chief Financial Officer ("CFO") of Gerdau since July 2015.

22.     Defendant André Piras de Oliveira Dias ("Dias") served as CFO of Gerdau from January 2013 until July 2015.

23.     Defendant Osvaldo Burgos Schirmer ("Schirmer") served as Financial Executive Officer or CFO of Gerdau from 1987 until January 2013.

24.     The defendants referenced above in ¶¶ 20-23 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Gerdau produces and commercializes steel products worldwide. The Company operates through Brazil Business Operation, North America Business Operation, South America Business Operation, and Special Steel Business Operation segments. The largest producer of long steel in the Americas, Gerdau has steel mills in Brazil, Argentina, Canada, Chile, Colombia, the Dominican Republic, Guatemala, India, Mexico, Peru, Spain, the United States, Uruguay, and Venezuela.  The Company sells its products through independent distributors, direct sales from the mills, and its retail network.

26.     Gerdau was founded in 1901 and is based in Porto Alegre, Brazil. The Company is a subsidiary of Metalúrgica Gerdau S.A. and its ADRs trade on the NYSE under the ticker symbol "GGB."

### Materially False and Misleading Statements Issued During the Class Period

27.     The Class Period begins on June 2, 2011, when Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2010 (the "2010 20-F").  For 2010, Gerdau reported net income of $1.22 billion, or $0.85 per diluted share, on revenue of $17.87 billion, compared to net income of $658.93 million, or $0.40 per diluted share, on revenue of $13.46 billion for 2009.  Gerdau also reported income taxes of R$502 million for 2010, compared to income taxes of R$27 million for 2009.

28.     In the 2010 20-F, Gerdau stated, in part:

**Legal Proceedings**

**General**

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management beliefs that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2010.

. . .

**Tax Provisions**

Part of the provisions correspond to tax matters. The most significant provision of contingencies are related to:

- R$ 49 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 21 million in Contributions allegedly due to the Social Security authorities, which are being challenged in tax foreclosure proceedings and suits for annulment pending before the Federal Courts.

- R$ 34 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), as well as R$ 22 million related to the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária —RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the reserve for contingency, will be released, as the amount in dispute, covered by deposits in court, will be fully paid. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 64 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ), mostly concerning the constitutionality and basis of calculation of the contribution.

- R$ 268 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) credits, (ii) taxation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security

Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS) over income in excess of sales, and (iii) exclusion of the Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS). In regards to proceedings explained in (ii) and (iii), the Company makes full deposit in courts.

- R$ 13 million related to other taxes, which are in dispute and for which the Company has set up a provision.

**There are other contingent tax liabilities, for which the probability of losses are not probable and, therefore, are not recognized in the provision for contingencies. These claims are comprised by:**

- The Company is a defendant in debt foreclosures filed by the state of Minas Gerais to demand Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits arising mainly from the sales of products to commercial exporters. The total amount of the lawsuits is R$ 56 million. The Company did not set aside a reserve for contingencies, since products for export are exempted from Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) and no tax is payable.

- The Company is a defendant in tax foreclosures, which are claiming Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits on the export of semi-finished manufactured products. The amount involved is R$ 111 million. Gerdau has not set aside a reserve for contingency for the lawsuits, as the products do not fit in the definition of semi-finished manufactured products as defined by federal complementary law and, therefore, are not subject to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS).

- The Company and its subsidiaries, Gerdau Aços Longos .S.A and Gerdau Comercial de Aços S.A., are part in other Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) discussions, mostly related to credit rights and aliquot differences. The total amount of the discussions is R$ 118 million. No reserve for contingency was set aside for these claims, as the probability of loss is not probable.

- The Company and its subsidiary, Gerdau Açominas S.A. and Gerdau Aços Longos S.A., are part in  discussions related to other taxes for which no

8

reserve for contingency was established, as the probability of loss is less likely than not. The total amount involved is R$ 97 million.

- The Company's subsidiary Gerdau Internacional Empreendimentos Ltda. is part in a legal proceeding discussing taxation of Corporate Income Tax (IRPJ) and Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro - CSLL) over profits generated abroad, in the amount of R$ 232 million. The Company has not made a provision for contingency, as its legal consultants consider the probability of loss as possible but not probable.

- The Company entered into Fiscal Recovering Program ("Programa de Recuperação Fiscal" — REFIS), brought in by Law 11.941/2009, which allowed the Company to pay fiscal debts in installments. The remaining balance of Fiscal Recovering Program ("Programa de Recuperação Fiscal" — REFIS), in which the Company has entered in 2000, will now be discharged in this Program.

29.     The 2010 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Johannpeter and Schirmer, stating that the financial information contained in the 2010 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     On April 23, 2012, Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2011 (the "2011 20-F"). For 2011, Gerdau reported net income of $1.20 billion, or $0.73 per diluted share, on revenue of $21.21 billion, compared to net income of $1.22 billion, or $0.85 per diluted share, on revenue of $17.87 billion for 2010. Gerdau also reported income taxes of R$253 million for 2011, compared to income taxes of R$502 million for 2010.

31.     In the 2011 20-F, Gerdau stated, in part:

**Legal Proceedings**

**General**

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management

9

believes that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2011.

. . .

**Tax Provisions**

Part of the provisions correspond to tax matters. The most significant provision of contingencies is related to:

- R$ 20 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 21 million in Contributions allegedly due to the Social Security authorities, which are being challenged in tax foreclosure proceedings and suits for annulment pending before the Federal Courts.

- R$ 37 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), as well as R$ 24 million related to the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária — RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the reserve for contingency, will be released, as the amount in dispute, covered by deposits in court, will be fully paid. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 70 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ), mostly concerning the constitutionality and basis of calculation of the contribution.

- R$ 485 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) credits, (ii) taxation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS) over income in excess of sales, and (iii) exclusion of the

Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS). In regards to proceedings explained in (ii) and (iii), the Company makes full deposit in courts.

. . .

**There are other contingent tax liabilities, for which the probability of losses are not probable and, therefore, are not recognized in the provision for contingencies. These claims are comprised by:**

- The Company is a defendant in debt foreclosures filed by the state of Minas Gerais to demand Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits arising mainly from the sales of products to commercial exporters. The total amount of the lawsuits is R$ 60 million. The Company did not set aside a reserve for contingencies, since products for export are exempted from Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) and no tax is payable.

- The Company and its subsidiary, Gerdau Aços Longos S.A., are defendants in tax foreclosures, which are claiming Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits on the export of semi-finished manufactured products. The amount involved is R$ 80 million. Gerdau has not set aside a reserve for contingency for the lawsuits, as the products do not fit in the definition of semi-finished manufactured products as defined by federal complementary law and, therefore, are not subject to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS).

- The Company and its subsidiary, Gerdau Aços Longos .S.A, are part in other Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) discussions, mostly related to credit rights and aliquot differences. The total amount of the discussions is R$ 84 million. No reserve for contingency was set aside for these claims, as the probability of loss is not probable.

- The Company and its subsidiaries, Gerdau Açominas S.A. and Gerdau Aços Longos S.A., are part in discussions related to other taxes for which no reserve for contingency was established, as the probability of loss is less likely than not. The total amount involved is R$ 138 million.

11

- The Company and its subsidiaries, Gerdau Internacional Empreendimentos Ltda. and Gerdau Aços Especiais S.A., are part in legal proceedings discussing taxation of Corporate Income Tax (IRPJ) and Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL) over profits generated abroad, in the amount of R$ 1.235 million. The Company has not made a reserve for contingency, as its legal consultants consider the probability of loss as possible but not probable.

- The Company subsidiaries, Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A., Gerdau Comercial de Aços S.A. and Gerdau Açominas S.A., have administratively challenged the disallowance of the deductibility of a premium generated through a corporate reorganization in 2005, in accordance with articles 7 and 8 of Law no. 9532/97. The premium was deducted from the tax bases of the income tax and social contribution on profits in the 2005-2010 period. The total updated amount under discussion is R$ 2,664 million. No reserve for contingency was established, since the Company believes, based on the opinion of its legal advisers, that the likelihood of an adverse decision is merely possible.

32.     The 2011 20-F contained signed certifications pursuant to SOX by Defendants Johannpeter and Schirmer, stating that the financial information contained in the 2011 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     On March 28, 2013, Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2012 (the "2012 20-F"). For 2012, Gerdau reported net income of $732.66 million, or $0.43 per diluted share, on revenue of $19.52 billion, compared to net income of $1.20 billion, or $0.73 per diluted share, on revenue of $21.21 billion for 2011. Gerdau also reported income taxes of R$63 million for 2012, compared to income taxes of R$254 million for 2011.

34.     In the 2012 20-F, Gerdau stated, in part:

**Legal Proceedings**

**General**

12

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management believes that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2012.

. . .

**Tax Provisions**

Part of these provisions correspond to tax matters. The most significant provisions of contingencies are related to:

- R$ 29 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 21 million in Contributions allegedly due to the Social Security authorities, which are being challenged in tax foreclosure proceedings and suits for annulment pending before the Federal Courts.

- R$ 33 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), as well as R$ 26 million related to the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária — RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the judicial deposit made will be used to settle the provision. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 30 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ), mostly concerning the constitutionality and basis of calculation of the contribution.

- R$ 677 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) credits, (ii) taxation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade

Social" - COFINS) over income in excess of sales, and (iii) exclusion of the Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS). In regards to proceedings explained in (ii) and (iii), the Company makes full deposit in courts.

**There are other contingent tax liabilities, for which the probability of losses are not probable and, therefore, are not recognized in the provision for contingencies. These claims are comprised by:**

- The Company is a defendant in debt foreclosures filed by the state of Minas Gerais to demand Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits arising mainly from the sales of products to commercial exporters. The total amount of the lawsuits is R$ 62 million. The Company did not set aside a reserve for contingencies, since products for export are exempted from Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) and no tax is payable.

- The Company and its subsidiary, Gerdau Aços Longos S.A., are defendants in tax foreclosures, which are claiming Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) credits on the export of semi-finished manufactured products. The amount involved is R$ 61 million. Gerdau has not set aside a reserve for contingency for the lawsuits, as the products do not fit in the definition of semi-finished manufactured products as defined by federal complementary law and, therefore, are not subject to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS).

- The Company and its subsidiary, Gerdau Aços Longos .S.A, are part in other Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) discussions, mostly related to credit rights and aliquot differences. The total amount of the discussions is R$ 67 million. No reserve for contingency was set aside for these claims, as the probability of loss is not probable.

- The Company and its subsidiaries, Gerdau Açominas S.A. and Gerdau Aços Longos S.A., are part in discussions related to other taxes for which no reserve for contingency was established, as the probability of loss is less likely than not. The total amount involved is R$ 158 million.

- The Company and its subsidiaries, Gerdau Internacional Empreendimentos Ltda. and Gerdau Aços Especiais S.A., are part in legal proceedings

discussing taxation of Corporate Income Tax (IRPJ) and Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL) over profits generated abroad, in the amount of R$ 1,281 million. The Company has not made a reserve for contingency, as the Company, with the assistance of its legal consultants consider the probability of loss as possible but not probable.

- The Company's subsidiaries, Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A., Gerdau Comercial de Aços S.A. and Gerdau Açominas S.A., have administratively challenged the disallowance of the deductibility of a premium generated through a corporate reorganization in 2005, in accordance with articles 7 and 8 of Law no. 9532/97. The premium was deducted from the tax bases of the income tax and social contribution on profits in the 2005-2010 period. The total updated amount under discussion is R$ 2,771 million. No reserve for contingency was established, since the Company believes, based on the opinion of its legal advisers, that the likelihood of an adverse decision is merely possible.

35.     The 2012 20-F contained signed certifications pursuant to SOX by Defendants Johannpeter and Dias, stating that the financial information contained in the 2012 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.     On March 24, 2014, Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2013 (the "2013 20-F").  For 2013, Gerdau reported net income of $736.73 million, or $0.43 per diluted share, on revenue of $18.54 billion, compared to net income of $732.66 million, or $0.43 per diluted share, on revenue of $19.52 billion for 2012. Gerdau also reported income taxes of R$241 million for 2013, compared to income taxes of R$63 million for 2012.

37.     In the 2013 20-F, Gerdau stated, in part:

**Legal Proceedings**

**General**

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management

15

believes that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2013.

. . .

**Tax Provisions**

Part of these provisions correspond to tax matters. The most significant provisions of contingencies are related to:

- R$ 25 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 32 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ) and Income Tax ("Imposto de Renda Pessoa Jurídica — IRPJ).

- R$ 51 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), and the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária — RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the judicial deposit made will be used to settle the provision. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 911 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS)  credits, (ii) taxation of those Contributions over income in excess of sales, and (iii) exclusion of the Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contributions.

- R$ 38 million related to other taxes, discussed in cases, for which the probability of loss is more likely than not.

**There are other contingent tax liabilities, for which the probability of losses are not more likely than not and, therefore, are not recognized in the provision for contingencies. These claims are comprised by:**

- The Company and its subsidiary, Gerdau Aços Longos S.A. and Gerdau Açominas S.A. are parties in legal proceedings related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) discussions, mostly related to credit rights and aliquot differences. The total amount of the discussions is R$ 753 million. No reserve for contingency was set aside for these claims, as the probability of loss is not probable.

- The Company and its subsidiaries, Gerdau Açominas S.A.; Gerdau Aços Longos S.A. and Gerdau Aços Especiais S.A., are part in discussions related to other taxes for which no reserve for contingency was established, as the probability of loss is less likely than not.  The total amount involved is R$ 228 million.

- The Company and its subsidiaries, Gerdau Internacional Empreendimentos Ltda.  and Gerdau Aços Especiais S.A., are part in legal proceedings discussing taxation of Corporate Income Tax (IRPJ) and Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL) over profits generated abroad, in the amount of R$ 1,328  million. The Company has not made a reserve for contingency, as the Company, with the assistance of its legal consultants consider the probability of loss as possible but not probable.

- The Company's subsidiaries, Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A., Gerdau Comercial de Aços S.A. and Gerdau Açominas S.A., have administratively challenged the disallowance of the deductibility of a premium generated through a corporate reorganization in 2005, in accordance with articles 7 and 8 of Law no. 9532/97. The premium was deducted from the tax bases of the income tax and social contribution on profits in the 2005-2010 period. The total updated amount under discussion is R$3,225 million. No reserve for contingency was established, since the Company believes, based on the opinion of its legal advisers, that the likelihood of an adverse decision is merely possible.

38.    The 2013 20-F contained signed certifications pursuant to SOX by Defendants Johannpeter and Dias, stating that the financial information contained in the 2013 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

17

39.     The statements referenced in ¶¶ 27-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was engaged in a bribery scheme in collusion with the Brazilian Finance Ministry's CARF; (ii) Gerdau had defrauded Brazilian tax authorities of roughly $429 million in taxes; (iii) Gerdau's CEO, Defendant Johannpeter, and other executives, directors and employees of the Company had engaged in bribery, money laundering, and influence peddling; and (iv) as a result of the foregoing, Defendants' statements about Gerdau's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

## The Truth Begins to Emerge

40.     On or around March 26, 2015, Brazilian authorities announced that a Federal Police Investigation, dubbed Operation Zelotes, had uncovered a multibillion-dollar tax fraud scheme at the Finance Ministry, reporting that as many as 70 companies had bribed members of the CARF, a body within the Finance Ministry that hears appeals on tax disputes, to obtain favorable rulings that recused or waived the amounts that the companies owed.  On or around March 29, 2015, it was reported that Gerdau was among the companies under investigation.

41.     On March 31, 2015, Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2014 (the "2014 20-F").  For 2014, Gerdau reported net income of $597.68 million, or $0.35 per diluted share, on revenue of $18.13 billion, compared to net income of $736.73 million, or $0.43 per diluted share, on revenue of $18.54 billion for 2013. Gerdau also reported income taxes of R$150 million for 2014, compared to income taxes of R$241 million for 2013.

42.     In the 2014 20-F, Gerdau stated, in part:

**Legal Proceedings**

**General**

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management believes that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2014.

. . .

Tax Provisions

Part of these provisions correspond to tax matters. The most significant provisions of contingencies are related to:

- R$ 26 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 34 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ) and Income Tax ("Imposto de Renda Pessoa Jurídica — IRPJ).

- R$ 33 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), and the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária — RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the judicial deposit made will be used to settle the provision. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 1.177 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento

da Seguridade Social" - COFINS) credits, (ii) taxation of those Contributions over income in excess of sales, and (iii) exclusion of the Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contributions.

- R$ 38 million related to other taxes, discussed in cases, for which the probability of loss is more likely than not.

**There are other contingent tax liabilities, for which the probability of losses are not more likely than not and, therefore, are not recognized in the provision for contingencies. These claims are comprised by:**

- The Company and its subsidiary, Gerdau Aços Longos S.A. and Gerdau Açominas S.A. are parties in legal proceedings related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) discussions, mostly related to credit rights and aliquot differences. The total amount of the discussions is R$ 997 million. No reserve for contingency was set aside for these claims, as the probability of loss is not probable.

- The Company and its subsidiaries, Gerdau Açominas S.A.; Gerdau Aços Longos S.A. and Gerdau Aços Especiais S.A., are part in discussions related to other taxes for which no reserve for contingency was established, as the probability of loss is less likely than not.  The total amount involved is R$ 331 million.

- The Company and its subsidiaries, Gerdau Internacional Empreendimentos Ltda.  and Gerdau Aços Especiais S.A., are part in legal proceedings discussing taxation of Corporate Income Tax (IRPJ) and Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL) over profits generated abroad, in the amount of R$ 1,386 million. The Company has not made a reserve for contingency, as the Company, with the assistance of its legal consultants consider the probability of loss as possible but not probable.

- The Company's subsidiaries, Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A. and Gerdau Açominas S.A., have administratively challenged the disallowance of the deductibility of a premium generated through a corporate reorganization in 2005, in accordance with articles 7 and 8 of Law no. 9532/97. The premium was deducted from the tax bases of the income tax and social contribution on profits in the 2005-2010 period. The total updated amount under discussion is R$3,408 million. No reserve for contingency was established, since the Company believes, based on the opinion of its legal advisers, that the likelihood of an adverse decision is merely possible.

43.     The 2014 20-F contained signed certifications pursuant to SOX by Defendants Johannpeter and Dias, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

44.     On December 4, 2015, the Brazilian publication *Jornal do Comércio* reported that a report by a committee of the National Congress of Brazil had named Gerdau, along with other companies, as a beneficiary of a tax evasion scheme.

45.     On or around February 25, 2016, post-market, Brazilian police raided Gerdau offices in connection with Operation Zelotes, as police carried out some 20 court orders for testimony and 18 search warrants in Recife, Porto Alegre, Rio de Janeiro, Sao Pãulo, and Brasília.  Gerdau's CEO, Defendant Johannpeter, was among the individuals ordered to testify by day's end.  In an e-mailed statement, Gerdau stated that the Company had never authorized the use of its name in illegal negotiations and that the Company abided by rigorous ethical standards.

46.     On this news, Gerdau's ADR price fell $0.03, or 3.16%, to close at $0.92 on February 25, 2016.

47.     On February 29, 2016, Gerdau announced that it would delay the release of its fourth-quarter financial results as the Company "analyze[d] the case records involving Gerdau in the recent phase of [the] Zelotes Operation."

48.     On March 31, 2016, Gerdau filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2015 (the "2015 20-F").  For 205, Gerdau reported a net loss of $1.86 billion, or $0.82 per diluted share, on revenue of $13.28 billion, compared to net income of $597.68 million, or $0.35 per diluted share, on revenue of $18.13 billion for 2014.  Gerdau also

reported income taxes of R$1.5 billion for 2015, compared to income taxes of R$150 million for 2014.

49.     In the 2015 20-F, Gerdau stated, in part:

***Our operations expose us to risks and challenges associated with conducting business in compliance with applicable anti-bribery anti-corruption and antitrust laws and regulations***

. . .

In March 2015, it was reported in the press that the Brazilian Federal Police had started an operation called Zelotes ("Operation"), to investigate whether a number of corporate taxpayers attempted to influence the decisions of the Administrative Board of Tax Appeals (CARF) through illegal means. On April 6, 2015, the Company received an inquiry from the CVM requesting clarifications regarding news reports linking the Company to the Operation. The Company clarified that, up to that moment, it had not been contacted by any public authority concerning the Operation.

Considering the involvement of Gerdau's name in press reports concerning the Operation, the Board of Directors decided to engage outside counsel, which would report to a Special Committee of the Board, to conduct an investigation.

On February 25, 2016, the Federal Police came to Gerdau's premises to execute court ordered searches and seizures, taking documents and data for examination. The Federal Police also interviewed certain individuals associated with Gerdau, including its Chief Executive Officer and another current Board member.  On that same date, filing a press release with SEC and CVM, the Company informed Bovespa and the New York Stock Exchange (NYSE).The internal investigation is ongoing, and the Company is cooperating with the Federal Police. See Notes 17 and 31 to the Consolidated Financial Statements (Tax, Civil and Labor Claims and Contingent Assets and Subsequent Events) for further information.

Although ***the Company does not presently believe that these matters will have a material adverse effect on its business***, given the inherent uncertainties in such situations, the Company can provide no assurance that these matters will not be material to its business in the future.

(Emphasis added.)

. . .

22

**Legal Proceedings**

**General**

Like other Brazilian companies, Gerdau and its subsidiaries are party to proceedings with respect to tax, labor and civil matters, most of them arising in the regular course of business. Based on advice from legal counsel, management believes that the reserve for provisions is sufficient to meet probable and reasonably estimable losses in the event of unfavorable rulings, and that the ultimate resolution will not have a significant effect on its consolidated financial position of December 31, 2015.

. . .

**Tax Provisions**

Part of these provisions correspond to tax matters. The most significant provisions of contingencies are related to:

- R$ 27 million related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS), the majority of which is related to credit rights involving the Finance Secretariat and the State Courts.

- R$ 37 million related to discussions on Social Contribution Tax on Profits ("Contribuição Social sobre o Lucro" - CSLL ) and Income Tax ("Imposto de Renda Pessoa Jurídica — IRPJ).

- R$ 35 million related to the Emergency Capacity Charge ("Encargo de Capacidade Emergencial" — ECE), and the Extraordinary Tariff Recomposition ("Recomposição Tarifária Extraordinária — RTE), which are charges included in the electric energy bills. The Supreme Court has upheld the constitutionality of the ECE, and for this reason, once the lawsuits are terminated, the judicial deposit made will be used to settle the provision. As to the RTE, the Company understands the charge as of a tax nature and, as such, incompatible with the National Tax System. For this reason the constitutionality of this charge is being challenged in court. The lawsuits are outstanding before the First and Second Instances of the Federal Justice. The Company has made a full deposit in court for the amount of the disputed charge.

- R$ 1.424 million related to (i) compensation of Contribution to the Social Integration Plan ("Contribuição ao Programa de Integração Social" - PIS) and Social Security Financing Contribution ("Contribuição para o Financiamento da Seguridade Social" - COFINS  credits, (ii) taxation of those Contributions over income in excess of sales, and (iii) exclusion of the Tax on Circulation of

Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) from the basis of calculation of the Contributions.

- R$ 48 million related to other taxes, discussed in cases, for which the probability of loss is more likely than not.

**Considering the opinion of our legal advisors and the assessment by management, the likelihood of loss in connection with the lawsuits and proceedings listed below is deemed possible (but not likely), and, according to the accounting principles currently in force, no accounting reserves were made in connection with said proceedings.**

- The Company and its subsidiary, Gerdau Aços Longos S.A. and Gerdau Açominas S.A. are parties in legal proceedings related to Tax on Circulation of Goods and Services ("Imposto sobre a circulação de Mercadorias e Serviços" - ICMS) — state VAT — discussions, which essentially relate to tax credit and rate differences, and aggregately amount to R$ 1,128 million.

- The Company and its subsidiaries, Gerdau Açominas S.A.; Gerdau Aços Longos S.A. and Gerdau Aços Especiais S.A., are part in discussions related to other taxes for which no reserve for contingency was established, as the probability of loss is less likely than not.  The total amount involved is R$ 441 million.

- Subsidiaries Gerdau Internacional Empreendimentos Ltda. and Gerdau Aços Especiais S.A., are parties to administrative proceedings relating to IRPJ — Corporate Income Tax and CSLL — Social Contribution Tax. Said proceedings relate to profits generated abroad and currently amount to R$ 1,447 million, of which (i) R$ 1,312 million correspond to two proceedings involving Gerdau Internacional Empreendimentos Ltda., whose voluntary appeals were partially granted in CARF's lower court and are subject to special appeals currently pending in CARF's higher court; and (ii) R$ 135 million correspond to a proceeding involving Gerdau Aços Especiais S.A., whose voluntary appeal is still pending in CARF's lower court. The amounts which are not subject to special appeal pending judgment of Gerdau Internacional Empreendimentos Ltda were referred for collection by the Federal Revenue Service Bureau and will be subject to judicial litigation by the Company.

- Subsidiaries Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A. and Gerdau Açominas S.A., are parties to administrative proceedings relating to the disallowance of the deductibility of goodwill generated in accordance with Article 7 and 8 of Law 9,532/97 — as a result of a corporate restructuring carried out in 2004/2005 — from the tax base of the Corporate Income tax - IRPJ and Social Contribution on Net Income - CSLL. The total updated amount of the proceedings is R$ 3,666 million, of which (i) R$ 1,263 million

correspond to three proceedings involving subsidiaries Gerdau Aços Longos S.A., Gerdau Aços Especiais S.A. and Gerdau Açominas S.A., whose voluntary appeals were granted in 2012 and are subject to appeals filed by the Special Prosecutor of the National Treasury, currently pending in CARF's higher court; (ii) R$ 1,882 million correspond to a proceeding involving Gerdau Aços Longos S.A., whose voluntary appeal was dismissed by CARF's lower court in 2014 and is subject to a special appeal currently pending in CARF's higher court; (iii) R$ 421 million correspond to two proceedings involving Gerdau Aços Longos S.A., whose voluntary appeal is currently pending in CARF's lower court; (iv) R$ 100 million correspond to a proceeding involving Gerdau Aços Especiais S.A., the decision of which is currently pending in the Federal Revenue Service Bureau.

50.     The 2015 20-F contained signed certifications pursuant to SOX by Defendants Johannpeter and Scardoelli, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

51.     The statements referenced in ¶¶ 41-43 and 48-50 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was engaged in a bribery scheme in collusion with the Brazilian Finance Ministry's CARF; (ii) Gerdau had defrauded Brazilian tax authorities of roughly $429 million in taxes; (iii) Gerdau's CEO, Defendant Johannpeter, and other executives, directors and employees of the Company had engaged in bribery, money laundering, and influence peddling; and (iv) as a result of the foregoing, Defendants' statements about Gerdau's business, operations, and prospects were false and misleading and/or lacked a reasonable basis

52.     On May 16, 2016, various news outlets reported that Brazil's federal police had accused Gerdau of evading $429 million in taxes and indicted a total of 19 Gerdau personnel,

including, including Defendant Johannpeter and some of the Company's directors and lawyers, on corruption-related charges including bribery, money laundering, and influence peddling.

53.     On this news, Gerdau's ADR price fell $0.13, or over 7%, to close at $1.72 on May 16, 2016.

54.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Gerdau securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Gerdau securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Gerdau or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

58.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff have no interests antagonistic to or in conflict with those of the Class.

59.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Gerdau;

- whether the Individual Defendants caused Gerdau to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Gerdau securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

61.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Gerdau securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Gerdau securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

64.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

65.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Gerdau securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Gerdau securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

67.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

29

influence the market for Gerdau securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Gerdau's finances and business prospects.

68.     By virtue of their positions at Gerdau, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Gerdau securities from their personal portfolios.

70.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Gerdau, the Individual Defendants had knowledge of the details of Gerdau's internal affairs.

71.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Gerdau.  As officers and/or directors of a publicly-held company, the Individual Defendants had

a duty to disseminate timely, accurate, and truthful information with respect to Gerdau's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Gerdau securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Gerdau's business and financial condition which were concealed by defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Gerdau securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

72.     During the Class Period, Gerdau securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Gerdau securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Gerdau securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Gerdau securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

73.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.     As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

75.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.     During the Class Period, the Individual Defendants participated in the operation and management of Gerdau, and conducted and participated, directly and indirectly, in the conduct of Gerdau's business affairs.  Because of their senior positions, they knew the adverse non-public information about Gerdau's misstatement of income and expenses and false financial statements.

77.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Gerdau's financial condition and results of operations, and to correct promptly any public statements issued by Gerdau which had become materially false or misleading.

78.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Gerdau disseminated in the marketplace during the Class Period concerning Gerdau's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Gerdau to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Gerdau within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Gerdau securities.

79.     Each of the Individual Defendants, therefore, acted as a controlling person of Gerdau. By reason of their senior management positions and/or being directors of Gerdau, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Gerdau to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Gerdau and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

80.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Gerdau.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.     Requiring defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated:   May 26, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, _Donald P. Boland + Mary A. Boland_ make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Gerdau S.A. ("Gerdau" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Gerdau securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Gerdau securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Gerdau securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed _May 30, 2016_
        (Date)

_Mary Boland_
_Donald P. Boland_
(Signature)

MARY A. BOLAND,
Donald P. Boland
(Type or Print Name)

**GERDAU S.A. (GGB)**                                    **Boland, Donald P. and Mary A.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|------------------|
| 4/15/2016 | Purchase | 600 | $2.1499 |
| 4/15/2016 | Purchase | 3,000 | $2.1000 |
| 5/10/2016 | Purchase | 1,500 | $2.0300 |
| 5/11/2016 | Purchase | 1,500 | $2.1190 |
| 5/10/2016 | Sale | 3,600 | $1.9900 |