UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD P. BOLAND and MARY A. BOLAND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GERDAU S.A., et al.,<br><br>Defendants. | Civil Action No. 1:16-cv-03925-LLS<br><br><u>CLASS ACTION</u><br><br>STIPULATION OF SETTLEMENT |

This Stipulation of Settlement, dated July 5, 2017 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Policemen's Annuity and Benefit Fund of Chicago (on behalf of itself and each of the Class Members), by and through its counsel of record in the Litigation; and (ii) Gerdau S.A. ("Gerdau" or the "Company"), André Bier Gerdau Johannpeter, Harley Lorentz Scardoelli, André Pires de Oliveira Dias, Osvaldo Burgos Schirmer, Jorge Gerdau Johannpeter, Claudio Johannpeter, Expedito Luz and Renato Gasparetto Jr. (together, "Defendants"), by and through their attorneys of record in the Litigation.[1] Lead Plaintiff and Defendants are referred to herein as the "Settling Parties." The Stipulation is intended to fully, finally and forever resolve, discharge and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I. THE LITIGATION

The Litigation is pending before the Honorable Louis L. Stanton in the United States District Court for the Southern District of New York (the "Court"). The initial complaint in this action was filed on May 26, 2016. On August 9, 2016, the Court appointed Lead Plaintiff and Lead Counsel. On October 31, 2016, Lead Plaintiff filed its Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint").

Lead Plaintiff alleges that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by, *inter alia*, issuing false and misleading statements and/or failing to disclose that: (i) the Company was engaged in a bribery scheme in collusion with Brazil's Board of Tax Appeals; (ii) Gerdau had defrauded Brazilian tax authorities of approximately 4 billion Brazilian reais (approximately $1.3 billion) in taxes; and (iii) directors and employees of the Company had engaged

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

in bribery, money laundering and influence peddling. Lead Plaintiff alleges that as a result of these material misrepresentations and omissions, Gerdau American Depositary Receipts ("ADRs") traded at artificially inflated prices. Defendants deny each and all of Lead Plaintiff's allegations. Defendants contend that they did not make any false or misleading statements, that they disclosed all information required to be disclosed by the federal securities laws and that they did not make any misstatements or omissions with the requisite intent or knowledge of wrongdoing. Defendants also contend that any losses suffered by Members of the Class were not caused by any false or misleading statements by Defendants and/or caused by intervening events.

On January 17, 2017, Gerdau and the Individual Defendants (with the exception of those Individual Defendants who had not been served with the Complaint) (the "Moving Individual Defendants") filed Motions to Dismiss the Complaint. At the request of Lead Plaintiff, Gerdau and the Moving Individual Defendants, on February 16, 2017, the Court stayed the Litigation in order for mediation to take place.

In an effort to settle the Litigation, Lead Plaintiff, Gerdau and the Moving Individual Defendants engaged the services of the Hon. Layn R. Phillips (Ret.) a nationally recognized mediator. They prepared detailed mediation statements and engaged in a full-day in-person mediation session with Judge Phillips on April 25, 2017. These efforts culminated on May 15, 2017 with the parties agreeing to settle the Litigation for Fifteen Million Dollars ($15,000,000), subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

## II. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under §§10(b) or 20(a) of the Securities Exchange Act of 1934. Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims

alleged by Lead Plaintiff in the Litigation, including, without limitation, any liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied, and continue to deny, among other allegations, the allegations that Lead Plaintiff or the Class have suffered any damage or that Lead Plaintiff or the Class were harmed by the conduct alleged in the Litigation or that could have been alleged as part of the Litigation. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall constitute an admission or finding of any fault, liability, wrongdoing or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants are entering into this Stipulation solely to eliminate the burden and expense of further litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III. LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports its claims. However, Lead Plaintiff and its counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and its counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and its counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation, as well as the difficulties in serving certain defendants who have not appeared in the case, conducting witness interviews in

Brazil, in Portuguese and obtaining document discovery from and deposing witnesses in Brazil, which is not a party to the Hague Convention. Lead Plaintiff and its counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiff and its counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class.

## IV. TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for itself and the Class Members) and Defendants, by and through their counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in consideration of the benefits flowing to the parties from the Settlement, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows.

### 1. Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1 "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2 "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.3 "Class" means all Persons who purchased or otherwise acquired Gerdau ADRs between April 23, 2012, and May 16, 2016, inclusive. Excluded from the Class are: Defendants, the officers and directors of Gerdau during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or

had a controlling interest. Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

1.4 "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶1.3 above.

1.5 "Class Period" means the period from April 23, 2012, through May 16, 2016, inclusive.

1.6 "Defendants" means Gerdau and the Individual Defendants.

1.7 "Effective Date," or the date upon which this Settlement becomes "effective," means three (3) business days after the date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred.

1.8 "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor(s).

1.9 "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review. Without limitation, an order or Judgment becomes final when: (a) either no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal has been filed and either (i) the court of appeals has either affirmed the order or Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal. For purposes of this

paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement. Any appeal or proceeding seeking subsequent judicial review pertaining solely to attorneys' fees and expenses, the Plan of Allocation, or the procedures for determining Authorized Claimants' recognized claims shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.10 "Individual Defendants" means André Bier Gerdau Johannpeter, Harley Lorentz Scardoelli, André Pires de Oliveira Dias, Osvaldo Burgos Schirmer, Jorge Gerdau Johannpeter, Claudio Johannpeter, Expedito Luz and Renato Gasparetto, Jr.

1.11 "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.12 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP.

1.13 "Lead Plaintiff" means Policemen's Annuity and Benefit Fund of Chicago.

1.14 "Lead Plaintiff's Counsel" means any attorney or firm who has appeared in the Litigation on behalf of Lead Plaintiff or the Class.

1.15 "Litigation" means the action captioned ***Boland v. Gerdau S.A., et al.***, Civil Action No. 1:16-cv-03925-LLS pending in the United States District Court for the Southern District of New York.

1.16 "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.17 "Person" means an individual, corporation, partnership, limited partnership, limited liability company, joint venture, association, joint stock company, estate, legal representative, trust,

unincorporated association, government or any political subdivision or agency thereof and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

1.18 "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.19 "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

1.20 "Related Parties" means each Defendants' direct controlling persons, associates, related or affiliated entities, and each and all of their respective past or present officers, directors, employees, partners, members, principals, agents, representatives, attorneys, auditors, financial or investment advisors, consultants, underwriters, accountants, investment bankers, commercial bankers, entities providing fairness opinions, advisors, insurers, reinsurers, heirs, spouses, executors, trustees, general or limited partners or partnerships, limited liability companies, members, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors or assigns, or any member of their immediate families, marital communities, or any trusts for which any of them are trustees, settlers or beneficiaries or anyone acting or purporting to act for or on behalf of them or their successors or collectively, the members of the Gerdau Johannpeter family, their lineal descendants or any trusts that are exclusively for the benefit of any of the foregoing, provided that any of the foregoing has the right to control such trust.

1.21 "Released Claims" means any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule, ordinance, administrative provision or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, which arise out of or relate in any way to both: (i) the purchase or acquisition of Gerdau ADRs during the Class Period, and (ii) the allegations, transactions, facts, matters, events, disclosures, registration statements, public filings, acts, occurrences, representations, statements, omissions or failures to act that were or could have been alleged by Lead Plaintiff or any Class Member in the Litigation. "Released Claims" does not include claims to enforce the Settlement. "Released Claims" includes "Unknown Claims" as defined in ¶1.29 hereof.

1.22 "Released Defendants' Claims" means any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments, and causes of action of every nature and description (including Unknown Claims), whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, that arise out of or relate in any way to the institution, prosecution or settlement of the claims against Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.

1.23 "Released Persons" means each and all of the Defendants and their Related Parties.

1.24 "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.25 "Settlement Amount" means fifteen million dollars ($15,000,000.00) in cash to be paid by wire transfer to the Escrow Agent pursuant to ¶3.1 of this Stipulation.

1.26 "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto. Such amount is paid as consideration for the full and complete settlement of all the Released Claims.

1.27 "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Class.

1.28 "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state and federal taxes.

1.29 "Unknown Claims" means any and all Released Claims which Lead Plaintiff, Lead Plaintiff's Counsel or any Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons and any and all Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her or its favor at the time of the release of the Lead Plaintiff, Lead Plaintiff's Counsel, or any Class Members, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, Lead Plaintiff, Lead Plaintiff's Counsel or Class Members, or might have affected his, her or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or to the release of the Released Persons, Lead Plaintiff, Lead Plaintiff's Counsel or Class Members. With respect to any and all Released Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each of the Settling Parties shall be deemed to have, and by operation of the Judgment

shall have, expressly waived to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Settling Parties shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, principle of common law or any provision of foreign law, which is similar, comparable or equivalent to California Civil Code §1542. The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but the Settling Parties shall expressly settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever settled and released any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

**2. CAFA Notice**

2.1 Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), no later than ten (10) calendar days after this Stipulation is filed with the Court, Gerdau, at its own costs, shall serve or cause to be served proper notice of the proposed Settlement upon those who are entitled to notice pursuant to CAFA.

**3. The Settlement**

**a. The Settlement Amount**

3.1 In full settlement of the claims asserted in the Litigation against Defendants and in consideration of the releases specified in ¶5 herein, Gerdau shall cause the Settlement Amount to be deposited into an interest-bearing escrow account ("Escrow Account") controlled by Lead Counsel serving as Escrow Agent on or before ten (10) business days after the entry of the Preliminary Approval Order, as defined in ¶4.1 herein.

3.2 If the entire Settlement Amount is not timely deposited into the Escrow Account, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel has notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

3.3 Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶3.1 herein, Defendants shall have no obligation to make any other payment into the Settlement Fund pursuant to this Stipulation and shall have no responsibility or liability with respect to the Escrow Account or the monies maintained in the Escrow Account, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

**b. The Escrow Agent**

3.4 The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶3.1 hereof in United States Agency or Treasury Securities or other instruments backed by the full faith & credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All costs and risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for the actions of the Escrow Agent.

3.5 The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants.

3.6 Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for any transaction executed by the Escrow Agent.

3.7 All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

3.8 Without further order of the Court, prior to the Effective Date, up to five hundred thousand dollars ($500,000) of the Settlement Fund may be used by Lead Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, assisting with the submission of claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow fees and costs, if any ("Notice and Administration Expenses"). After the Effective Date, to the extent that Notice and Administration Expenses exceed five hundred thousand dollars ($500,000), Lead Counsel may pay such Notice and Administration expenses, only pursuant to order of the Court. The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for any Notice and Administration Expenses.

**c. Taxes**

3.9 (a) The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶3.9, including the "relation-back election" (as defined in Treas. Reg.

§1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the elections described in ¶3.9(a) hereof) shall be consistent with this ¶3.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.9(c) hereof.

(c) All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶3.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶3.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax

Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.9.

3.10 This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

**d. Termination of Settlement**

3.11 In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated or canceled, or the Effective Date otherwise fails to occur for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶3.8 and 3.9 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from counsel for the Defendants in accordance with ¶8.5 herein.

**4. Preliminary Approval Order and Settlement Hearing**

4.1 Promptly after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, certification of the Class for settlement purposes only and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶7.1 hereof, and the date of the Settlement Hearing as defined below. Once the Settlement Fund has been distributed pursuant to ¶6 hereof, the Claims Administrator will within five (5) days thereafter take down, deactivate or otherwise delete the domain www.bolandvgerdausa.com.

4.2 Gerdau shall provide to the Claims Administrator, at no cost to Lead Plaintiff or the Class, within five (5) business days of execution of this Stipulation, those transfer records in the possession of the transfer agent that reflect the names and addresses of Persons who purchased or otherwise acquired Gerdau ADRs during the Class Period. Gerdau shall provide such transfer records in electronic searchable form, such as Excel.

4.3 It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court. Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

4.4 Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5. Releases**

5.1 Upon the Effective Date, as defined in ¶1.7 hereof, Lead Plaintiff shall, and each of the Class Members and their predecessors, successors, agents, representatives, attorneys, affiliates and the heirs, executors, administrators, successors and assigns of each of them, in their capacity as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

5.2 Any Proof of Claim and Release that is executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.3 Upon the Effective Date, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum, asserting the Released Claims against any of the Released Persons.

5.4 Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Defendants' Claims against the Lead Plaintiff, each and all of the Class

Members and Lead Plaintiff's Counsel (including Unknown Claims). Claims to enforce the terms of this Stipulation are not released.

**6. Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1 The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

6.2 The Settlement Fund shall be applied as follows:

(a) to pay all Notice and Administration Expenses;

(b) to pay the Taxes and Tax Expenses;

(c) to pay attorneys' fees and expenses of Lead Plaintiff's Counsel (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d) after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

6.3 After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following provisions of this Stipulation.

6.4 Within one hundred-twenty (120) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

6.5 Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiff, its counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

6.6 Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed.

6.7 Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify in a timely fashion and in writing all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶6.8 below.

6.8 If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶6.7 above, or within ten (10) business days if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

6.9 Each claimant who declines to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim including, but not limited to, all releases provided for herein and in the Judgment and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's claim. In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.

6.10 The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit

charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court.

6.11 Defendants and their Related Parties shall have no responsibility for, interest in or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration or calculation of claims, the payment or withholding of Taxes or Tax Expenses or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants, their Related Parties or counsel for Defendants with respect to the matters set forth in ¶¶6.1-6.13 hereof; and the Class Members, Lead Plaintiff and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

6.12 No Person shall have any claim against Defendants or their Related Parties, counsel for Defendants, Lead Plaintiff, Lead Plaintiff's Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.13 It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any orders entered pursuant to the Stipulation.

**7. Lead Plaintiff's Counsel's Attorneys' Fees and Expenses**

7.1 Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. (An application for fees and expenses may include a request for reimbursement of Lead Plaintiff's reasonable costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995.) Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

7.2 Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, within three (3) business days after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among Lead Plaintiff's Counsel, if any, in a manner in which Lead Counsel in good faith believes reflects the contributions of such counsel to the initiation, prosecution and resolution of the Litigation.

7.3 In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel and such other Lead Plaintiff's Counsel and Lead Plaintiff who have received any portion of the Fee and Expense Award shall, within fifteen (15) business days from receiving notice from the Defendants' counsel or from a court of appropriate jurisdiction,

refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination. Any refunds required pursuant to ¶7.3 shall be the several obligation of Lead Counsel, Lead Plaintiff's Counsel and Lead Plaintiff that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund. Each such Lead Counsel, Lead Plaintiff's Counsel or Lead Plaintiff receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that such Person and its partners, shareholders and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

7.4 The procedure for and the allowance or disallowance by the Court of any applications by any Lead Plaintiff's Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

7.5 Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. With the sole exception of Gerdau's obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶3.1, Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Plaintiff's Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

7.6 Defendants and their Related Parties shall have no responsibility for the allocation among Lead Plaintiff's Counsel and/or any other Person who may assert some claim thereto of any Fee and Expense Award that the Court may make in the Litigation.

7.7 The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**8. Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

8.1 The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a) execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

(b) the Court has entered the Preliminary Approval Order, as required by ¶4.1 hereof;

(c) the Settlement Amount has been deposited into the Escrow Account;

(d) Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.3 hereof;

(e) the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(f) the Judgment has become Final, as defined in ¶1.9 hereof.

8.2 Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If the conditions specified in ¶8.1 hereof are not met, then the Settlement shall be canceled and terminated subject to

¶¶8.4, 8.5 and 8.6 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Settlement.

8.3 Defendants shall have the right (which right must be exercised unanimously) to terminate the Settlement and render it null and void in the event that Class Members who purchased or otherwise acquired more than a certain percentage of Gerdau ADRs subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Plaintiff and Defendants, by and through their counsel. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

8.4 If, before the Settlement becomes Final, Gerdau files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by Gerdau to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned to Gerdau out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the Judgment, including the releases pursuant thereto, and the Settlement and this Stipulation shall terminate.

8.5 Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, within fifteen (15) business days after written notification of such event is sent by counsel for the Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶3.8 or 3.9 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶3.8 or 3.9 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution. Such refunds shall be pursuant to written instructions from Defendants' counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same manner as the Settlement Fund described in this ¶8.5. Such payments shall be pursuant to written instructions from Defendants' counsel.

8.6 In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of May 15, 2017. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.29, 3.6-3.11, 7.3-7.4, 8.4-8.7, and 9.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to

terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

8.7 If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor any of its counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶3.8 or 3.9. In addition, any amounts already incurred pursuant to ¶¶3.8 or 3.9 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶3.11 and 8.5 hereof.

**9. Miscellaneous Provisions**

9.1 The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

9.2 The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in

any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3 Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of or a basis for (i) the validity of any Released Claim or of any wrongdoing or liability of the Defendants or their respective Related Parties, (ii) personal jurisdiction over any Individual Defendant in the Litigation, or (iii) service of the Complaint on any Individual Defendant, or (b) is or may be deemed to be or may be used as an admission of, evidence of or basis for any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.5 All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.6 This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7 This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto and no representations, warranties

or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own fees and costs.

9.8 Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate.

9.9 Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.10 This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or pdf'd via e-mail shall be deemed originals.

9.11 All notices, requests, demands, claims and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid) or by email; or (iii) seven (7) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

***If to Lead Plaintiff or to Lead Counsel:***

ROBBINS GELLER RUDMAN
& DOWD LLP
HENRY ROSEN
ELLEN GUSIKOFF STEWART
SUSANNAH CONN
655 West Broadway, Suite 1900
San Diego, CA 92101

***If to Gerdau or to Gerdau's Counsel:***

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
JAY B. KASNER
ANDREW R. BEATTY
4 Times Square
New York, NY 10036

***If to the Individual Defendants or to the Individual Defendants' Counsel:***

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
MICHAEL J. DELL
KAREN S. KENNEDY
JULIANA OLIVEIRA MAGGIO
1177 Avenue of the Americas
New York, NY 10036

9.12 This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

9.13 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

9.14 Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

9.15 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of New York without giving effect to its choice-of-law principles.

9.16 The headings to the Sections of this Stipulation are inserted for convenience of reference only, shall not be deemed to be a part of this Stipulation for any purpose and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys as of the date set forth above.

Samuel H. Rudman
David A. Rosenfeld
ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Henry Rosen
Ellen Gusikoff Stewart
Susannah R. Conn
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
henryr@rgrdlaw.com
elleng@rgrdlaw.com
sconn@rgrdlaw.com

Christopher C. Gold
ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
cgold@rgrdlaw.com

Lead Counsel for Plaintiff

Jay B. Kasner
Andrew R. Beatty
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: 212/735-3000
212/735-2000 (fax)

Counsel for Defendant Gerdau S.A.

Michael J. Dell
Karen S. Kennedy
Juliana Oliveira Maggio
KRAMER, LEVIN, NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212/715-9100
212/715-8000 (fax)

Counsel for the Individual Defendants

CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on July 6, 2017, I caused a true and correct copy of the attached:

Stipulation of Settlement

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filings to all counsel registered to receive such notice.

*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN