UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

DONALD P. BOLAND and MARY A.                 :    Civil Action No. 1:16-cv-03925-LLS
BOLAND, Individually and on Behalf of All    :
Others Similarly Situated,                   :    CLASS ACTION
                                             :
                          Plaintiffs,        :
                                             :    MEMORANDUM OF LAW IN SUPPORT
                                             :    OF LEAD COUNSEL'S MOTION FOR AN
             vs.                             :    AWARD OF ATTORNEYS' FEES AND
                                             :    EXPENSES AND AWARD TO LEAD
GERDAU S.A., et al.,                         :    PLAINTIFF PURSUANT TO 15 U.S.C. §78u-
                                             :    4(a)(4)
                          Defendants.        :
                                             :
_____ x

1308528_1

## TABLE OF CONTENTS

Page

I.     INTRODUCTION .............................................................................................1

II.    HISTORY AND BACKGROUND OF THE LITIGATION.................................3

III.   ARGUMENT ...................................................................................................4

       A.     Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
              from the Common Fund.........................................................................4

       B.     The Court Should Award a Reasonable Percentage of the Common Fund............5

       C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
              the-Fund Method..................................................................................8

       D.     The Fee Request Is Reasonable Under the Lodestar Method................................10

       E.     The Relevant Factors Confirm that the Requested Fee Is Reasonable .................12

              1.     The Time and Labor Expended by Counsel ................................................13

              2.     The Risks of the Litigation .......................................................................14

                     a.     The Contingent Nature of Lead Counsel's Representation
                            Supports the Requested Fee ........................................................14

                     b.     Litigation Risks..........................................................................16

                     c.     Risk as to Damages ....................................................................17

              3.     The Magnitude and Complexity of the Litigation ....................................18

              4.     The Quality of Representation Supports the Requested Fee ....................19

              5.     Public Policy Considerations....................................................................20

              6.     The Class' Reaction to the Fee Request to Date Supports the
                     Requested Fee ...........................................................................................20

IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND
       NECESSARY TO THE PROSECUTION OF THIS LITIGATION................................21

V.     LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE TIME AND
       EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)................................................22

VI.    CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ....................................................................16, 17

*Aponte v. Comprehensive Health Mgmt.*,
  No. 10 Civ. 4825 (JLC), 2013 WL 1364147
  (S.D.N.Y. Apr. 2, 2013).....................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985).............................................................................................5

*Bd. of Trs. of the Operating Eng'rs Pension Tr. v.
JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 09-cv-09333-KBF, slip op.
  (S.D.N.Y. Nov. 20, 2013) ...................................................................................8

*Blum v. Stenson*,
  465 U.S. 886 (1984)..........................................................................................6, 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................................4

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ............................................................................7

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................18

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
  No. 1:08-cv-03612-RJS, slip op.
  (S.D.N.Y. Apr. 5, 2013).......................................................................................9

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  No. 1:12-cv-01203-VEC, 2015 U.S. Dist. LEXIS 181932
  (S.D.N.Y. Oct. 15, 2015) .............................................................................8, 22

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v.
  Pierson*, 607 F. App'x 73 (2d Cir. 2015)......................................5, 7, 10, 18

*Cornwell v. Credit Suisse Grp.*,
  No. 08-cv-03758(VM), slip op.
  (S.D.N.Y. July 20, 2011) ..............................................................................9, 11

**Page**

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................6, 11

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................14

*Elliot v. Leatherstocking Corp.*,
   No. 3:10-CV-0934, 2012 WL 6024572
   (N.D.N.Y. Dec. 4, 2012) .........................................................................................8

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011) ..............................................................................7

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ............................................................................ *passim*

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..................................................................................7

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ..............................................................................6

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .........................................................................5, 20, 22

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ..............................................................................16

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................................7, 8, 14

*In re Am. Int'l Grp., Inc.*,
   No. 04 Civ. 8141 (DAB), 2010 WL 5060697
   (S.D.N.Y. Dec. 2, 2010) .........................................................................................22

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236
   (S.D.N.Y. Apr. 6, 2006) .........................................................................................18

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) ................................................................................12

- iii -

**Page**

*In re Bayer AG Sec. Litig.*,
   No. 03 Civ. 1546 (WHP), 2008 WL 5336691
   (S.D.N.Y. Dec. 15, 2008) ........................................................................................18

*In re BioScrip, Inc. Sec. Litig.*,
   No. 13-cv-6922 (AJN), 2017 U.S. Dist. LEXIS 118881
   (S.D.N.Y. July 26, 2017) ......................................................................................8, 19

*In re Bisys Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726
   (S.D.N.Y. July 16, 2007) ....................................................................................12, 19

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .....................................................................................2

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715
   (S.D.N.Y. May 13, 2011) .........................................................................................21

*In re CIT Grp. Inc. Sec. Litig.*,
   No. 1:08-cv-06613-BSJ-THK, slip op.
   (S.D.N.Y. June 13, 2012) ..........................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354
   (E.D.N.Y. June 24, 2010) ....................................................................................11, 14

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................................15

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
   (S.D.N.Y. Nov. 8, 2010) ................................................................................. *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................7, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................7

*In re Ikon Office Sols., Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ...........................................................................12, 18

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................................21

*In re Intercept Pharms., Inc. Sec. Litig.*,
    No. 1:14-cv-01123-NRB, slip op.
    (S.D.N.Y. Oct. 20, 2016) ...........................................................................22

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527 (DLC), 2004 WL 2397190
    (S.D.N.Y. Oct. 26, 2004) ...........................................................................5

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) ...........................................................10

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007) .........................................................................16

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .....................................................16, 19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007) .............................................................................11

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008)........................................................................2

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988-SI, 2009 WL 1709050
    (N.D. Cal. June 19, 2009), *aff'd*,
    627 F.3d 376 (9th Cir. 2010) .....................................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................6

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ...........................................................14

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)................................................................20, 21

- v -

Page

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011).................................................................................15

*In re Sanofi-Aventis Sec. Litig.*,
   No. 1:07-cv-10279-GBD, slip op.
   (S.D.N.Y. Jan. 22, 2014)..................................................................................9

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................5, 11, 14

*In re Thirteen Appeals Arising out of the San*
*Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)................................................................................7

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808
   (S.D.N.Y. Nov. 7, 2007) ..................................................................... *passim*

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................................................................10

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964).........................................................................................5

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ..............................................................................7

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
   No. 08-cv-03601-HB-FM, slip op.
   (S.D.N.Y. Dec. 18, 2013)..................................................................................8

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................7, 12, 20

*Mass. Bricklayers & Masons Tr.*
*Funds v. Deutsche Alt-A Sec., Inc.*,
   No. 2:08-cv-03178-LDW-ARL, slip op.
   (E.D.N.Y. July 11, 2012) ..................................................................................9

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).....................................................................................8, 11

1308528_1

Page

*NECA-IBEW Health & Welfare Fund*
*v. Goldman, Sachs & Co.*,
  No. 1:08-cv-10783-LAP, 2016 WL 3369534
  (S.D.N.Y. May 2, 2016) ................................................................................11

*Patel v. L-3 Commc'ns Holdings, Inc.*,
  No. 1:14-cv-06038-VEC, slip op.
  (S.D.N.Y. Aug. 17, 2017) ..............................................................................8

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .......................................................................7

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) .............................................................................7

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................................16

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)........................................................................4, 6

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) .........................................................................7

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814 (MP), 2004 WL 1087261
  (S.D.N.Y. May 14, 2004)........................................................................14, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) .........................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................................6, 7, 11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ............................................................................................1, 22
  §78u-4(a)(6) ...................................................................................................7

**Page**

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369, 1995 WL 709276 (1995) ..................................................9

**SECONDARY AUTHORITY**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
   §1803..............................................................................................................................4

1308528_1

## I.      INTRODUCTION

Court-appointed Lead Counsel, Robbins Geller Rudman & Dowd LLP, has secured a $15.0

million Settlement for the Class – a very good result under the circumstances, achieved in spite of

serious obstacles to recovery in the Litigation.[1]   In order to obtain this Settlement, Lead Plaintiff and

Lead Counsel overcame a number of significant challenges to proving both liability and damages

that posed a serious risk of no recovery, or a substantially lesser recovery than the Settlement, for the

Class.   In recognition of these risks, Lead Counsel now respectfully moves this Court for an award of

attorneys' fees in the amount of 25% of the Settlement, and $162,734.05 in expenses that were

reasonably and necessarily incurred in prosecuting and resolving the Litigation against Defendants

and obtaining this Settlement for the benefit of the Class.   In addition, Lead Plaintiff Policemen's

Annuity and Benefit Fund of Chicago ("Lead Plaintiff" or "Chicago Police") seeks a modest award

of $3,765 for the time it spent representing the Class.   As set forth below, the relevant factors

articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.   *See*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

This fee request has the full support of the Lead Plaintiff.   *See* Declaration of Brian Wright

Filed on Behalf of Chicago Police, ¶¶15-19 ("Chicago Police Decl."), filed herewith.   The Second

Circuit has directed district courts to:

> give serious consideration to negotiated fees because PSLRA lead plaintiffs often
> have a significant financial stake in the settlement, providing a powerful incentive to
> ensure that any fees resulting from that settlement are reasonable.   ***In many cases***,

---

[1]     Capitalized terms used herein are defined and have the meanings contained in the Stipulation of
Settlement (Dkt. No. 50) (the "Stipulation"), the accompanying Declaration of Henry Rosen in
Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of
Allocation and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to
15 U.S.C. §78u-4(a)(4) (the "Rosen Decl."), and in the Memorandum of Law in Support of Lead
Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of Allocation ("Settlement
Memorandum"), submitted concurrently herewith.

the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis.

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) ("courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel"). In addition, following an extensive Court-ordered notice program, not a single Class Member has objected to the maximum amount of fees and expenses set forth in the Notice.[2]

As detailed here, in the Rosen Declaration, and in the Settlement Memorandum, the Settlement achieved here following extensive investigation, represents a very good result for Lead Plaintiff and the Class, particularly when judged in the context of the significant litigation risks attendant in this Litigation. The $15 million Settlement that Lead Counsel obtained provides the Class with an immediate and certain recovery in a case that faced substantial obstacles to establishing liability, loss causation, and damages that could have prevented any recovery at all. The Settlement represents approximately 15% of the maximum recoverable damages estimated on a per share basis by Lead Plaintiff's damages consultant. In achieving this result, Lead Counsel worked more than 2,200 hours over the course of this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

---

[2]  As of the date of this fee memorandum, which is before the September 29, 2017 deadline for filing objections, Lead Counsel has not received any objections to the fee request. Pursuant to the Court's Preliminary Approval Order, over 36,900 copies of the Notice were mailed to potential Members of the Class and nominees, advising them that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 25% of the total recovery, plus expenses of no greater than $200,000, plus interest on both amounts. If any timely objections are received from Class Members, Lead Counsel will address them in a reply brief, which will be filed with the Court no later than October 13, 2017.

1308528_1

Lead Counsel believes that an attorney fee award of 25%, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel, as well as the excellent result achieved in difficult litigation.  When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees at 25% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and expenses requested by Lead Counsel are reasonable in amount and were necessarily incurred.  Finally, the Lead Plaintiff greatly contributed to the prosecution and settlement of the Litigation.  It reviewed and approved papers filed with the Court and mediator, and participated in discussions regarding case strategy and settlement.  Lead Plaintiff seeks approval for an award associated with the time it spent dedicated to the Litigation.  Its time is documented in its accompanying declaration.  *See* Chicago Police Decl., ¶¶20-21.  Accordingly, the Court should grant the full amount requested by Lead Plaintiff.

## II.   HISTORY AND BACKGROUND OF THE LITIGATION

This securities fraud class action was brought under the Securities Exchange Act of 1934 (the "Exchange Act").  Lead Plaintiff alleges that Defendants violated the Exchange Act during the April 23, 2012 through May 16, 2016 Class Period, by engaging in a fraudulent scheme and making materially false and misleading statements regarding the Company's financial condition, internal controls, and compliance policies.  More specifically, Lead Plaintiff alleges that Defendants failed to disclose that: (a) Gerdau was engaged in a bribery scheme in collusion with Brazil's Administrative Council of Tax Appeals ("CARF"); (b) the Company had defrauded Brazilian tax authorities; (c) Gerdau's CEO and other directors and employees of the Company had engaged in bribery, money laundering, and influence peddling; and (d) the tax appeals themselves related to a series of self-dealing transactions from 2005 designed to enable Gerdau to avoid taxes.  Rosen Decl., ¶10.

- 3 -

Lead Plaintiff further alleges that all of the Company's Class Period financial statements were false because of the alleged material omissions, and that Defendants' statements regarding the Company's internal and financial controls and strict adherence to high ethical standards were also false. *Id.*, ¶11. Lead Plaintiff alleges that Defendants' misrepresentations and fraudulent scheme had the effect of artificially inflating the price of Gerdau ADRs, which inflation came out of the ADR price when the truth was revealed at the end of the Class Period. *Id.*

A detailed description of Lead Counsel's prosecution of this case is set forth in the accompanying Rosen Declaration. For the sake of brevity, the Court is respectfully referred to the Rosen Declaration.

## III.    ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchs. Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

- 4 -

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2. Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). Fairly compensating Lead Counsel for the risks it took in bringing this action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. Courts routinely find that the percentage-of-the-fund method, under

- 5 -

which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[3]

The Supreme Court has also indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie*, 166 F.3d at 460 (stating that the "percentage-of-the-fund method has been deemed a

---

[3]   *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . . The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

solution to certain problems that may arise when the lodestar method is used in common fund cases"). More recently, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122; *see also City of Providence*, 2014 WL 1883494, at *11-*12.[4]

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6) (emphasis added). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award

---

[4]    All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

1308528_1

Lead Counsel attorneys' fees based on a percentage of the fund.  The percentage approach not only directly aligns the interests of counsel and the class (*Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, at *5 (N.D.N.Y. Dec. 4, 2012)), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees."  *Am. Bank Note*, 127 F. Supp. 2d at 432.

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate Court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-class action, the customary fee arrangement would be contingent and in the range of 33% of the recovery.  *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

The requested 25% fee is well within the range of percentage fees awarded within the Second Circuit in other comparable securities and antitrust cases.  *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, No. 13-cv-6922 (AJN), 2017 U.S. Dist. LEXIS 118881, at *58 (S.D.N.Y. July 26, 2017) (awarding 25% of $10,900,000 settlement fund, finding that such an award "'falls within the range of percentages regularly awarded in' analogous common fund cases") (citation omitted); *Patel v. L-3 Commc'ns Holdings, Inc.*, No. 1:14-cv-06038-VEC, slip op. at 1 (S.D.N.Y. Aug. 17, 2017) (awarding 25% of $34.5 million settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 U.S. Dist. LEXIS 181932, at *12 (S.D.N.Y. Oct. 15, 2015) (awarded fees of 30% of $33 million recovery, plus expenses); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) (awarded fees of 33-1/3% of $85 million recovery, plus expenses); *Bd. of Trs. of the Operating Eng'rs Pension Tr. v. JPMorgan*

- 8 -

*Chase Bank, Nat'l Ass'n*, No. 09-cv-09333-KBF, slip op. at 1 (S.D.N.Y. Nov. 20, 2013) (awarded fees of 30% of $23 million recovery, plus expenses); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarded fees of 30% of $29 million recovery, plus expenses); *In re Sanofi-Aventis Sec. Litig.*, No. 1:07-cv-10279-GBD, slip op. at 1 (S.D.N.Y. Jan. 22, 2014) (awarded fees of 27.5% of $40 million recovery, plus expenses); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758(VM), slip op. at 2 (S.D.N.Y. July 20, 2011) (awarded fees of 27.5% of $70 million recovery, plus expenses); *Mass. Bricklayers & Masons Tr. Funds v. Deutsche Alt-A Sec., Inc.*, No. 2:08-cv-03178-LDW-ARL, slip op. at 3 (E.D.N.Y. July 11, 2012) (awarded 26.5% of $32.5 million recovery, plus expenses); *In re CIT Grp. Inc. Sec. Litig.*, No. 1:08-cv-06613-BSJ-THK, slip op. at 1-2 (S.D.N.Y. June 13, 2012) (awarded 26.5% of $75 million recovery, plus expenses).[5]

Another factor favoring the reasonableness of Lead Counsel's 25% fee application under the percentage-of-the-fund method is that this fee was negotiated with and approved by the Lead Plaintiff, an institutional investor charged by the Court and the PSLRA with responsibility for monitoring Lead Counsel. *See* Chicago Police Decl., ¶¶15-18.

The PSLRA was intended to encourage sophisticated and financially-interested investors like Lead Plaintiff to assume control of securities class actions. H.R. Conf. Rep. No. 104-369, at *32, 1995 WL 709276, at *731 (1995). Congress believed that these institutions would be in the best position to monitor the prosecution of litigation, to assess the quality of counsel's representation, and to determine a fair fee. Here, Lead Plaintiff, a large institution, played an active role in the Litigation and closely supervised the work of Lead Counsel. *See* Chicago Police Decl., ¶¶7-9. Accordingly, Lead Plaintiff's endorsement of the fee request supports its approval. *See, e.g., Veeco,*

---

[5]   All unreported authorities are attached hereto as Exhibits 1 through 9.

2007 WL 4115808, at *8 ("public policy considerations support the award in this case because the Lead Plaintiff . . . a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request").

### D.    The Fee Request Is Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar.  *See Goldberger*, 209 F.3d at 50.  Applying the lodestar cross-check underscores and affirms the reasonableness of the requested percentage.  "Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work."  *City of Providence*, 2014 WL 1883494, at *13.  "Calculation of the lodestar, however, is simply the beginning of the analysis."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995).  Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and its paraprofessionals have spent, in the aggregate, 2,220.95 hours in the prosecution of this case producing a total lodestar amount of $1,571,252.75 when multiplied by Lead Counsel's billing rates.  *See* the accompanying Declaration of Henry Rosen Filed on Behalf of Robbins Geller Rudman & Dowd LLP ("Robbins Geller Decl.").[6]  The amount of attorneys' fees

---

[6]    In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  Lead Counsel is among the most prominent, experienced, and well-regarded securities practitioners in the nation.  Therefore, the hourly rates are

requested by Lead Counsel herein, $3,750,000, plus interest, represents a modest multiplier of 2.3 to counsel's aggregate lodestar.[7]

The requested 2.3 multiplier in this Litigation is within the range of multipliers commonly awarded in securities class actions and other comparable litigation.  In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors.  *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'") (citation omitted); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Indeed, in complex contingent litigation, lodestar multipliers between 2 and 5 are commonly awarded.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (awarding fee representing a 3.9 multiplier); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases); *Credit Suisse*, slip op. at 4 (awarding fee representing a multiplier of 4.7); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing 2.78 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this

---

reasonable here.  *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

[7]   The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Jenkins*, 491 U.S. at 283-84.

- 11 -

Court."); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar-building litigation. *See In re Ikon Office Sols., Inc.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Lead Counsel invested substantial time and effort prosecuting this Litigation against Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

1308528_1

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation commenced, Lead Counsel and its paraprofessionals devoted over 2,200 hours to prosecuting the Class' claims.  As detailed in the Rosen Declaration, submitted herewith, Lead Counsel, among other things:

- conducted an extensive factual investigation relating to Defendants' conduct and the tax avoidance scheme;

- researched the law relevant to the claims asserted, including Brazilian tax laws, and Defendants' potential defenses thereto, and drafted detailed complaints;

- drafted an opposition to Defendants' motions to dismiss the Consolidated Complaint;

- consulted with Brazilian attorneys regarding the unique issues raised in the Litigation;

- consulted with experts and consultants in the areas of damages and market efficiency;

- participated in lengthy arm's-length settlement negotiations and mediation with Defendants; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

Rosen Decl., ¶¶3-31.  Moreover, Lead Counsel, with the assistance of its damages expert, and in-house damages consultant, prepared the proposed Plan of Allocation.  Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Lead

- 13 -

Counsel's work in the Litigation will not end with the Court's approval of the Settlement. Additional hours and resources will necessarily be expended assisting Members of the Class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at \*6 (S.D.N.Y. Apr. 2, 2013). The significant amount of time and effort devoted to this case by Lead Counsel to obtain a $15 million recovery confirms that the 25% fee request is reasonable.

      **2.**      **The Risks of the Litigation**

            **a.**      **The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee**

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *Converse*, 2010 WL 2653354, at \*5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not

- 14 -

just the risk of no payment, but also the risk of underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).  When considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought.  *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Counsel in prosecuting this class action.  Lead Counsel undertook this Litigation on a wholly-contingent fee basis, investing a substantial amount of time and money to prosecute this very risky action without a guarantee of compensation or even the recovery of expenses.  Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or even payment of its expenses had this case not been successful.

From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require.  In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees.  It is wrong to presume that a law firm handling complex contingent

- 15 -

litigation always wins.  There are numerous instances where in contingent cases such as this one, plaintiff's counsel have expended thousands of hours without receiving any compensation.[8]

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive.  Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.  Litigation Risks

While Lead Plaintiff remains confident in its ability to prove its claims, and that once the truth was revealed, Class Members suffered legally cognizable losses on their purchases of Gerdau ADRs during the Class Period, it recognizes that its ability to prove liability was far from certain. Rosen Decl., ¶¶33-35.  As detailed in the Rosen Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the materiality, scienter, and loss causation elements of

---

[8]    The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent.  There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise.  *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiffs' counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

Lead Plaintiff's claims under the federal securities laws.  The Individual Defendants also challenged this Court's personal jurisdiction over them.  Obtaining documents and testimony from witnesses in Brazil would be expensive, if possible at all.  Therefore, there was a question whether Lead Plaintiff would ultimately be able to prove that Defendants who could be sued in this Court acted knowingly or recklessly made materially false or misleading statements or omissions, as required.

With respect to proving loss causation, Defendants would continue to argue that the declines in Gerdau's ADR price were caused by factors other than Lead Plaintiff's alleged corrective disclosures.  *Id.*, ¶36.[9]  Defendants would never concede their liability and, if their motions to dismiss were denied, would continue to press their defenses at summary judgment and trial.  Lead Plaintiff also faced the risk that the Court would deny its motion to certify the Class, if the Litigation reached that stage.

### c.     Risk as to Damages

Whether Lead Plaintiff could prove damages also was unsettled.  Defendants strenuously disagreed with Lead Plaintiff's damages theories and estimates.  In order for the Class to recover damages at the level estimated by Lead Counsel's expert, it would need to prevail on each and every one of the claims alleged, for the entirety of the Class Period.  The damage assessments of the parties' respective trial experts would be sure to vary substantially, and trial would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

---

[9]     Another litigation risk for Lead Plaintiff was the proper length of the Class Period.  *Id.*

- 17 -

1308528_1

### 3.      The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also FLAG Telecom*, 2010 WL 4537550, at *27. "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described in greater detail in the accompanying Settlement Memorandum and the Rosen Declaration, this Litigation involved a number of difficult and complex questions concerning liability of foreign defendants and loss causation that would have required extensive additional efforts by Lead Counsel and further consultation with Brazilian law, tax, accounting and economic experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence which would require translation, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 25% fee. *City of Providence*, 2014 WL 1883494, at *16.

- 18 -

1308528_1

### 4.      The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved.  *See* Settlement Memorandum at 18-19; *see also FLAG Telecom*, 2010 WL 4537550, at *28; *Bisys*, 2007 WL 2049726, at *3.  It took a great deal of skill to achieve a settlement at this level in this particular case.  Lead Counsel is a nationally known leader in the fields of securities class actions and complex litigation.  This is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation.  *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiffs' counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *BioScrip*, 2017 U.S. Dist. LEXIS 118881, at *73 ("[O]pposing counsel in this case was itself highly skilled, a factor courts have considered in approving fees."); *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms").  Here, Defendants are represented by lawyers from Skadden, Arps, Slate, Meagher & Flom LLP and Kramer Levin Naftalis & Frankel LLP, highly respected law firms who presented very skilled defenses and spared no effort in representing their clients.  Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial

- 19 -

and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.      Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at \*29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at \*9 ("'To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.'") (citation omitted).  Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 6.      The Class' Reaction to the Fee Request to Date Supports the Requested Fee

To date, the Claims Administrator has sent over 36,900 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the total recovery, plus expenses not to exceed $200,000, plus interest on both amounts.[10]  The time to object to the fee request expires on September 29, 2017.  To date, just one week before the objection deadline, not a single objection to the fee and expense amounts set forth in the Notice has been received.  Such a "low level of objection is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted).  Moreover, "a significant number of investors in the class were

---

[10]     *See* Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, ¶11 and Ex. A ("Sylvester Decl."), submitted herewith.

'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id.* Additionally, the Lead Plaintiff supports the fee request. *See* Chicago Police Decl., ¶17. The fact that no objections were received is compelling evidence of the fairness of the fee request.

## IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $162,734.05 in expenses incurred while prosecuting the Litigation.   Lead Counsel has submitted a declaration regarding these modest expenses, which are properly recovered by counsel.  *See* accompanying Robbins Geller Decl.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Counsel's expenses include the costs of hiring experts and consultants, travel, mediating the Class' claims, and computerized research.   A complete breakdown by category of the expenses incurred is set forth in the Robbins Geller Declaration.  These expenses were critical to Lead Plaintiff's success in achieving the Settlement.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [f]or this reason, they are properly chargeable to the

- 21 -

Settlement fund."). Not a single objection to the expense amount set forth in the Notice has been received. Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement.

## V. LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE TIME AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff seeks approval for an award of $3,765, for the time it spent directly relating to its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

The Lead Plaintiff dedicated time to the Litigation by reviewing significant pleadings and briefs in the Litigation, communicating regularly with Lead Counsel, and monitoring the progress of settlement negotiations. *See* Chicago Police Decl., ¶20. Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. *See Kinross Gold*, 2015 U.S. Dist. LEXIS 181932, at *14 (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *In re Intercept Pharms., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, slip op. at 1 (S.D.N.Y. Oct. 20, 2016) (awarding $5,275.00 and $7,401.25 to lead plaintiffs "directly relating to the representation of the Class"); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Lead Plaintiff took an active role with the prosecution of the Litigation. These are precisely the types of activities that courts have found to support awards to class representatives. *See, e.g., In*

- 22 -

*re Am. Int'l Grp., Inc.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit) (citation omitted).

The Notice sufficiently informed potential Class Members that such expenses would be sought. Sylvester Decl., Ex. A at 2. The modest request by Lead Plaintiff is supported by declaration, is reasonable and fully justified under the PSLRA, and should be granted. There have been no objections to this request.

## VI.   CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the $15 million recovery, plus expenses in the amount of $162,734.05, plus interest on both amounts, and $3,765 to Lead Plaintiff.

DATED: September 22, 2017                   Respectfully submitted,


                                          s/ Ellen Gusikoff Stewart
                                     ─────────────────────────────────
                                          Henry Rosen
                                          Ellen Gusikoff Stewart
                                          Susannah R. Conn
                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          655 West Broadway, Suite 1900
                                          San Diego, CA 92101
                                          Telephone: 619/231-1058
                                          619/231-7423 (fax)
                                          henryr@rgrdlaw.com
                                          elleng@rgrdlaw.com
                                          sconn@rgrdlaw.com

- 23 -

1308528_1

Samuel H. Rudman
David A. Rosenfeld
ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Christopher C. Gold
ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
cgold@rgrdlaw.com

Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I, Ellen Gusikoff Stewart, hereby certify that on September 22, 2017, I caused a true and

correct copy of the attached:

> Memorandum of Law in Support of Lead Counsel's Motion for an Award of
> Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C.
> §78u-4(a)(4)

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filings to all counsel registered to receive such notice.



*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART